BARTHOLOMEW *against* BUSHNELL.

Where there is a warranty of soundness, and the action is brought for a breach thereof, proof of the warranty is indispensable, and it is immaterial whether the defendant *knew* of the unsoundness, or not.

But if the action be brought, not for a breach of warranty, but for fraud in the sale, by representations which the defendant knew to be false, such knowledge is an essential ingredient in the fraud, and must be proved.

Therefore, where, on the trial of an action on the case, alleging, that the defendant sold two horses to the plaintiff, by fraudulently and falsely warranting them to be sound, when in fact they were blind in both their eyes, which was unknown to the plaintiff, but well known to the defendant, after the plaintiff had introduced evidence to prove, that the defendant, at the time of the sale, made certain representations respecting the soundness of the horses, which he knew to be false, the defendant claimed to have proved, that the

*Litchfield,*
July, 1850.

Bartholomew
*v.*
Bushnell.

representations made by him, were accompanied by a distinct refusal to warrant the horses ; but the court instructed the jury, that if the horses were unsound, and the defendant made representations calculated and intended to deceive the plaintiff, and he was thereby deceived, the defendant was precluded from saying there was no warranty ; it was held, that this was a misdirection, as proof of fraud, without a warranty, would not support the declaration. [The chief justice and one judge dissenting.]

THIS was an action on the case.   The declaration alleged, that on the 4th day of *April* 1847, the plaintiff, at the special instance and request of the defendant, bargained with him to buy of him two horses for one grey horse, of the value of 200 dollars, and 195 dollars in cash ; and the defendant, by fraudulently and falsely warranting his said two horses to be sound and good, every way, sold his said two horses to the plaintiff for said grey horse and 195 dollars in money, delivered and paid to the defendant, by the plaintiff, for the same ; whereas in truth, said two horses, at the time of said sale, and fraudulent warranty of the same to the plaintiff, were unsteady, restif and ungovernable in the harness, and were blind in both their eyes, and have from that time hitherto so continued ; all which was unknown to the plaintiff, but was well known to the defendant ; and the defendant, by means of the premises, falsely and fraudulently deceived him, the plaintiff, in the sale of said two horses ; and thereby the said two horses became of no use to the plaintiff ; to his damage, &c.

The cause was tried, on the general issue, at *Litchfield*, *February* term, 1850.

On the trial, the plaintiff claimed to have proved, that the defendant, at the time of the sale of the two horses mentioned in the declaration, made to the plaintiff certain false and fraudulent representations, calculated and intended, by the defendant, to deceive the plaintiff, in regard to the soundness of the horses ; from which the law would imply a false and fraudulent warranty that they were sound.   He also claimed to have proved, that the horses were unsound, at the time of sale, and that such unsoundness was well known to the defendant, but was wholly unknown to the plaintiff ; whereby the plaintiff was deceived and defrauded.

The defendant claimed to have proved, that no express warranty of the horses was made ; and that the representa-

tions claimed by the plaintiff to be false and fraudulent, were accompanied by a distinct refusal by the defendant, to warrant the horses to correspond with those representations. And the defendant prayed the court to instruct the jury, that if they should find, that no express warranty of the horses was made, and that the representations claimed by the plaintiff to be false and fraudulent, were accompanied by a distinct refusal of the defendant, to warrant the horses to correspond with those representations, they should return a verdict in favour of the defendant.

The court did not charge the jury as requested by the defendant, but did charge them, that if, at the time of the sale, the horses were unsound, and if the defendant *knew* they were unsound, and yet made representations calculated and intended to deceive the plaintiff, by concealing their unsoundness; and if the plaintiff was in fact deceived thereby; the defendant would be precluded from saying, that there was no warranty, although he said, at the time, he would not warrant the horses.

The jury returned a verdict in favour of the plaintiff, stating in it, that they found for the plaintiff to recover, as his actual damages, independent of his costs and trouble in prosecuting his suit, the sum of 127 dollars; but if the law was so, that he was entitled to any thing for such costs and trouble, then they found for him to recover of the defendant, the sum of 200 dollars damages, and his taxable costs.

The defendant thereupon moved for a new trial; and the questions of law were reserved for the advice of this court.

*Woodruff* and *Peet*, in support of the motion, contended, 1. That the charge was erroneous. The declaration contains but one count, and that is for a fraudulent and false *warranty.* Now, admitting that an action in this form lies, in a case of false and fraudulent representations, unaccompanied by a refusal to warrant, on the ground that the law will, in such case, *imply* a warranty; yet such implication will not be made, in case of an express refusal to warrant, but the plaintiff must bring his action for *fraud.* *This* action cannot be sustained. It cannot be sustained on a *contract of warranty;* for there is no such contract. Nor on a false and fraudulent warranty, as a *tort;* for however the assertions

*Litchfield,*
*July, 1850.*

Bartholomew
*v.*
Bushnell.

might be regarded as false and fraudulent declarations, (which might make the defendant liable in an action for *fraud*,) they can, with no propriety, be called false and fraudulent *warranties*.

2. That if judgment is to be rendered for the plaintiff, it should be for the *actual damage* only; which is found to be 127 dollars. In actions for tort, the damages must be the legal and natural consequences of the injury ; and extra costs are not recoverable as special damages. 1 *Chitt. Plead.* 349. In this case, the rule must be the difference between the value of the horses, at the time of the sale, if they had been as represented, and their value with the defects complained of. *Cary* v. *Greeman,* 4 *Hill,* 625. See also *Towers* v. *Barrett,* 1 *Term R.* 136. *Caswell* v. *Coare,* 1 *Taun.* 566. *Stiles v. White* & al. 11 *Metc.* 356.

*J. H. Hubbard* and *G. H. Hollister,* contra, contended, 1. That the charge was unexceptionable. A man cannot shield himself from the consequences of his fraud and deception, by declaring that he will not be liable on a contract of warranty. In this case, the gist of the action is the *fraud* and *dishonesty* of the defendant, by means of which the plaintiff has been swindled out of 250 dollars; and it would be a disgrace to the law, if the defendant were allowed to protect himself from liability, by a declaration that he would not warrant, made at the very time when he was committing the fraud. *West* v. *Anderson,* 9 *Conn. R.* 107. *Baglehole* v. *Walters,* 3 *Campb.* 154. *Chitt. Cont.* 456. *Oneida Manufacturing Society* v. *Lawrence* & al., 4 *Cowen,* 440.

2. That the jury, in estimating the damages, had a right to take into consideration the trouble and expense of the plaintiff, in prosecuting his suit. In this way only, can the plaintiff be *indemnified* for the wrongful conduct of the defendant. The case of *Linsley* v. *Bushnell,* 15 *Conn. R.* 226. 236. has settled the rule in this state. See also *Merrills* v. *Tariff Manufacturing Company,* 10 *Conn. R.* 384.

WAITE, J. This is an action founded upon a warranty, as to the soundness of a pair of horses, sold by the defendant to the plaintiff. The declaration is *in tort,* in the usual form, except that it contains an averment that the defendant *knew*

*Litchfield,*
*July,* 1850.

Bartholomew
*v.*
Bushnell.

the horses to be unsound, which has generally been omitted, as unnecessary, especially since the decision in the case of *Williamson* v. *Allison,* 2 *East's R.* 446.

Such was formerly the usual mode of declaring; but of late the practice has been more general to declare in *assumpsit.* Still the plaintiff has his election, either to declare *in tort* or *in assumpsit* for a breach of a contract of warranty. The former mode will be adopted, when he wishes to join in the declaration other counts founded upon the fraud of the defendant; and the latter, when he wishes to insert the money counts, and other counts appropriate to the action of *assumpsit.*

On the trial of this cause, the plaintiff introduced evidence to prove, that the defendant, at the time of the sale, made certain representations respecting the soundness of the horses, which he knew to be false. The defendant claimed, that they were accompanied by a distinct refusal to warrant the horses; and requested the court to instruct the jury, that if there was no express warranty, the plaintiff could not recover.

The jury, however, were not so instructed, but were told, that if, at the time of the sale, the horses were unsound, and the defendant knowing it, made representations calculated and intended to deceive the plaintiff, by concealing the unsoundness, and the plaintiff was thereby deceived, the defendant was precluded from saying there was no warranty. The charge seems to proceed upon the ground that proof of *fraud,* without evidence proving *a warranty,* would support the declaration. A majority of the court are of opinion that this position is not supported by the authorities.

The distinction between a warranty that a personal chattel is sound, and a fraud in the sale of it, is broad and manifest. If a man sell a horse to another, and expressly warrant him to be sound, the contract is broken, if the horse prove otherwise. The purchaser, in such case, relies *upon the contract;* and it is immaterial to him, whether the vendor did, or did not, know of the unsoundness of the horse. In either case, he is entitled to recover all the damages which he has sustained, by reason of the breach of that contract. " A warranty " says Lord *Mansfield,* " extends to all faults, *known* and *unknown,* to the seller." *Stuart* v. *Wilkins,* 1 *Doug.* 20.

But if the vendor say to the purchaser, " I do not know

whether the horse is, or is not, sound, and therefore will not warrant him; all I can say is, that I have long owned him, and know of no unsoundness:" here manifestly is no warranty; and if the vendor spoke the truth, no fraud.

But if the vendee can show, that the horse was unsound, and the vendor knew it, at the time of the sale, and that in consequence of the false representations he had made, the purchaser had been defrauded, the vendor would be liable, not for a breach of a contract of warranty, for he made no such contract, but for making representations which *he knew* to be false. In such case, the guilty knowledge of the vendor would constitute an essential ingredient in the fraud; and in an action against him, should be both alleged and proved.

To entitle the vendee to recover, under such circumstances, his action must be founded, not upon a breach of a contract of warranty, but upon the fraud practiced by the vendor; or at least, there should be a count adapted to a charge of that character.

This distinction is not only consonant to reason, but has the support of numerous decisions. A leading case upon this subject is that of *Williamson* v. *Allison*, already cited. There the action was case, founded upon a warranty of some claret, and the declaration, in form, was almost identical with the present. On the part of the defendant, it was contended, that the plaintiff was not entitled to recover, inasmuch as there was no proof of the *scienter*, as laid in the declaration. But the court held, that it was sufficient for the plaintiff to prove the warranty itself, and the breach of it; and that the averment of the *scienter* was an immaterial averment, and need not be proved.

Ever since that decision, it has been considered as an elementary principle in law, that in an action founded upon a warranty of the soundness of a personal chattel, whether the declaration be, in form, *ex delicto* or *ex contractu*, it is unnecessary to aver or prove, that the vendor knew the article to be different from what it was warranted to be. And in the most approved forms no such averment is made. 2 *Chitt. Plead.* 279.

And in a subsequent case, of the same kind, founded upon a warranty of some sheep, alleged to have been made by two defendants, the plaintiff proved the warranty to have been

made by one of them, but there was no evidence affecting the other; whereupon the judge directed a non-suit. Upon an application to set aside the non-suit, it was claimed, that the action was founded on the *tort;* that torts are in their nature *several;* and that in actions of *tort,* one defendant may be acquitted, and the others found guilty. Lord *Ellenborough,* in delivering judgment, said, " this is unquestionably true ; but still it is not sufficient to decide the present question. The declaration alleges the deceit to have been effected, *by means* of a warranty, made *by both the defendants,* in the course of a *joint* sale by them both of sheep, their joint property. The joint contract, thus described, is the foundation of the joint warranty laid in the declaration, and essential to its legal existence and validity : and it is a rule of law, that the proof of the contract must correspond with the description of it, in all material respects." And the court held, that " in whatever action, be the same debt, *assumpsit,* or tort, the allegation of a contract becomes necessary, it must be proved as laid, in all material respects;" and that, in the case then under consideration, the allegation of warranty was material, and could not be rejected as surplusage. *Weall* v. *King* & al. 12 *East,* 452.

The same doctrine has been recognized by this court, and the authority of that case sanctioned. *Walcott* v. *Canfield* & al. 3 *Conn. R.* 194.

The ruling of the judge on the circuit, seems in direct conflict with these decisions. He told the jury, in substance, that it was enough for the plaintiff to prove a *fraud* in the sale of the horses, without proving an express warranty—or, in other words, that proof of *fraud* would dispense with proof of the *warranty.* In the cases cited, the warranty was deemed a material allegation, and one that must not only be proved, but must be proved substantially as alleged.

And such is unquestionably the true doctrine. The declaration states, that *by means of a false warranty,* the plaintiff was *deceived* in the purchase of the horses. There is no averment that any false representation or assertion was made, aside from what is contained in the warranty. Now, if we strike out the averment respecting the warranty, we destroy the very foundation of the action; and there will be nothing left to sustain it. In this respect, the averment is materially

different from that respecting the *scienter*.    That, as we have seen, may be entirely rejected as surplusage, and still a good declaration will remain.

It is however said, that there might have been a warranty in this case, although the defendant said he would not warrant.    It is undoubtedly true, that no particular form of words is required to constitute a warranty respecting a personal chattel.    *Salmon* v. *Ward*, 2 *Car. & Payne*, 211. (12 *E. C. L.* 94.)    And had the judge submitted the question to the jury to say, from the evidence, whether, in point of fact, the defendant had not made the warranty, as set forth in the declaration, notwithstanding the assertion that he would not warrant, we are not prepared to say, that he would have erred.    Such question would have been a question of fact, peculiarly within the province of the jury.    But the difficulty is, he did not so leave the question, but informed the jury, that under certain circumstances, proof of such contract was unnecessary.

Again, it is said, that the defendant is liable for his fraud, although he made no warranty.    And this is also true.    But here the difficulty again is, that the declaration is not adapted to the case.    It should have been founded upon the false representations, which he made, and not upon a warranty, which, for aught that appears, he never made.

Had the plaintiff declared in *assumpsit*, instead of case upon the warranty, it would hardly be claimed, that the action could be supported, by merely proving a fraud in the sale.    Indeed, this precise point has been so decided, by this court.    *Dean* v. *Mason*, 4 *Conn. R.* 428.    That was an action of *assumpsit* upon a warranty respecting the quality of some deer skins.    The plaintiff failed to prove an express warranty; and the question was, whether he could recover, either upon the ground of fraud, or an implied warranty; and the court held, that he could not.    *Hosmer*, Ch. J. in delivering the opinion of the court, said, that " according to the most approved precedents, it was an action *on the contract of warranty*, and nothing more ;" and he held the evidence of fraud inadmissible.    The remarks of *Van Ness*, J. in *Evertson* v. *Miles*, 6 *Johns. R.* 138. were cited with approbation.    " When the plaintiff does not go for a breach of contract, but grounds his action on deceit and fraud in the

sale, the fraud must be averred and charged as a substantive allegation.   To admit proof of it, without such averment, would be going wide of the issue, and taking the party by surprise."   And *Chapman*, J., who differed from the other members of the court, only upon the subject of an implied warranty, said, " the principles adopted by the court, in deciding that *fraud* in a sale will not support a count on an express warranty, (I mean where there is no implied one.) I fully concur in.   The form of the action should be adapted to the nature of the injury.   The defendant, in an action on the warranty, is not informed of the nature of the plaintiff's claim, and of course, cannot be prepared to make his defence."

*Litchfield*,
July, 1850.
————
Bartholomew
v.
Bushnell.

This case conclusively shows, that in the case under consideration, the plaintiff cannot recover, without proof of an *express warranty ;*   and had the declaration been in *assumpsit*, evidence of fraud on the part of the defendant in the sale of the horses, would have been inadmissible, and have furnished no ground for a recovery.

In the opinion of a majority of this court, the same reasoning, and the same rule, apply, when the declaration is in tort, and is founded solely upon a breach of a contract of warranty.   We therefore advise a new trial.

2.   Another question has been made, as to the amount of damages which the plaintiff may recover.   And we are of opinion, that as the action was brought to recover damages for the mere breach of a contract, he is entitled only to such damages as he has sustained, by reason of such breach, without reference to his costs and expenses in prosecuting his suit.

STORRS and ELLSWORTH, Js., were of the same opinion.

HINMAN, J.   One of the first general principles which the law teaches, is, that every man promises to do that which, by law, it is his duty to do.   This principle lies at the very foundation of the law of contracts, and bears up the vast class of cases arising upon implied promises ; and, very often, by construing words of equivocal import, in conformity to its spirit, raises a liability as upon an express promise, when the party making it supposes, that, by some ingenuity in the form of

expression, he may be able to evade liability. Every lawyer knows, too, that in very many of these cases, if not in most of them, the same facts which will sustain an action on the promise, will also sustain an action *ex delicto*, for the wrong. Carriers warrant the transportation and delivery of goods entrusted to them ; attorneys, surgeons, and mechanics, contract to discharge their duty with skill and integrity ; and vendors warrant their title and right to sell ; and for any neglect or unskillfulness by the former classes, or for any deceit by the latter, a party who has been injured, may sustain an action, either in tort, for the wrong, or in contract, on the promise, at his election ; and so in the great mass of cases which arise from the negligence of bailees generally. These commonplace suggestions are only made because, if I understand the ground of decision in this case, it is, at least, in part, in consequence of some supposed incongruity in sustaining an action for a breach of warranty only, by the same facts which show the defendant to have been guilty of a fraud.

It has been said, that in order to make a contract, the minds of the parties must meet. This may be true, in a technical, legal sense ; but is not always true, as a matter of fact, as is evident by reference to the large class of promises, arising from legal liabilities, and from many cases of express contract.

I do not doubt, that a contract of warranty should have been proved in this case, or what was tantamount to it ; but I differ with the court, in regard to whether such a contract was proved ; and I deny that there is any departure from principle, in raising such a contract, from fraudulent representations.

In 3 *Bl. Com.* 166. it is laid down, " that if a vendor know the goods to be unsound, and has used any art to disguise them, or if they are in any shape different from what he represents them to be to the buyer, this artifice shall be equivalent to an express warranty, and the vendor is answerable for their goodness."

So, too, it is said, in 1 *Selw. N. P. tit.* Deceit, *p.* 647. " If an innkeeper sell wine as sound and good, which he knows to be corrupt, although there be not an express warranty, yet an action on the case in nature of deceit will lie, because," says this author, " it is a warranty in law." The

same doctrine runs through the text books, and the authorities in support of it, are well collected in 2 *Stephens' N. P.* 1280.

In *Medina* v. *Stoughton*, 1 *Salk.* 210. the principle is stated to be, that where one, having possession of a personal chattel, sells it, affirming it to be his, this amounts to a warranty, for which an action lies. This principle has ever been recognized as law, and has since been extended, so that the assertion of title is now held to be a warranty, whether the vendor is in possession or otherwise. *Pasley* v. *Freeman,* 3 *Term R.* 51. 57.

Indeed, representations of the quality of an article sold, if they are any thing more than mere commendation of it, generally amount to a warranty. In 2 *Steph. Com.* 127. it is said, " that mere representation may amount to a warranty ; and it will be a question for a jury, whether, under the circumstances, it was so understood by the parties ; or whether, on the other hand, it was a mere commendation by the seller, of his own wares. And in the leading case of *Parkinson* v. *Lee,* 2 *East,* 314. counsel and the court, throughout the trial, recognized the right of the plaintiff to recover, if there was either an express warranty, or fraud in the seller of the hops. *Lawrence,* J. cites with approbation what is said in 1 *Roll. Abr.* 90. that if a merchant sell cloth to another, *knowing* it to be badly fulled, an action lies, because it is a warranty in law.

And why should not deceitful representations be held to be warranties in law ? Can the party making them be permitted to say, that he cheated, and, therefore, he did not warrant ? And, if not, what is a warranty, or promise, on such a subject as this, but a representation, on which a party relies, and, as in this case, which was made for the purpose of inducing him to rely on it ?

It is said to be a sound principle, to construe the words of a promise, in the sense in which the party making it, believed the other party to have accepted it. The rule is well stated, by judge *Swift:* " Any representation made by the seller, which he has reason to believe will be relied on, will be an express warranty." 1 *Sw. Dig.* 382. This rule was fully recognized, in *Wood* v. *Smith,* 4 *Car. & Pa.* 45. (19 *E. C.*

*Litchfield,*
July, 1850.

Bartholomew
*v.*
Bushnell.

*L.* 267.) which is a case, as it seems to me, that should govern this, if it is law.

The defendant's counsel have relied upon the declaration of the defendant, at the time of sale, that he would not warrant the horses. It has not, however, been suggested, that this remark has influenced the result to which the court has come. The case last cited, with that of *West* v. *Anderson,* 9 *Conn. R.* 107. it is believed, are considered by us all, as conclusively against the defendant on the point. He cannot, in this way, destroy the effect of his false representation : to allow him to do so, would indeed be " as disgraceful to the law as such conduct would be to him." Indeed, the case of *West* v. *Anderson* would seem to be a direct authority in favour of the course taken in the court below, on the principal point in the case. It does not, I am aware, directly appear from the report, that it was, like this, an action for the breach of a false or deceitful warranty ; yet I infer from the rule of damages adopted, that such was the fact. Suppose in an action of *assumpsit,* for the avails of property stolen and sold, would it avail the defendant, that he had refused to pay, or to agree to pay ?

It is supposed, that the principle, that, in actions of this sort, the *scienter* need not be alleged or proved, (2 *East,* 445.) has mainly influenced the decision. No doubt this shows, that the gist of the action is the warranty broken. But what it has to do with the manner of proving the warranty, is not, to me, so obvious. Nor am I able to see, that the cases which show there is no implied warranty against secret defects arising from the payment of a merchantable price, where the sale is a fair one, have any thing to do with the question. If, as remarked by *Best,* C. J. a warranty is raised, by the sale of a horse for a particular purpose, that the animal shall answer the purpose indicated, it is because it results from the nature of the transaction, that the parties expected the animal would answer such purpose. Upon the same principle, a contract is raised in the sale of manufactured articles, that they shall be reasonably fit for the purpose for which they are ordered. *Laing* v. *Fidgeon,* 6 *Taun.* 108. (1 *E. C. L.* 327.) *Jones* v. *Bright,* 5 *Bing.* 533. (15 *E. C. L.* 529.) On the same ground, one who professes to be a mechanic, is liable for any

want of skill in his employment. *Brown* v. *Edgington*, 2 *Man. & Gran.* 279. (40 *E. C. L.* 371.)

If it be said, that affirmations and representations, at the time of sale, do not amount to a warranty, unless so intended and received ; and that the court, in this case, did not submit this question to the jury ; the answer is, it was for the defendant to show they were not so intended ; the general rule being, that such representations do amount to a warranty. Besides, the court was not asked to submit any question of the sort to the jury. The defendant chose rather to stand upon his naked declaration, that he would not warrant, as conclusive, in law, upon the question of intention. If, as I suppose we all agree, he was wrong in this, I do not see what other course the court below could have taken ; and to grant a new trial for this error, if it be one, is to grant it for an error into which the court was led, by the course taken by the defendant's counsel. The plaintiff, having proved certain false representations in regard to the soundness of the horses, from which he claimed, the law would raise a warranty ;and also, that the defendant, at the time, knew them to be unsound, rested. The defendant, as the motion shows, neither denied making the representations, nor the effect of them, as a warranty ; but insisted merely, that, as they were accompanied by a declaration, that he would not warrant, they could not, in law, amount to a warranty ; and so he requested the court to charge the jury. Had he asked that the whole evidence be submitted to the jury, for them to find, whether there was a warranty, or whether the representations were intended as mere commendation by the seller, no doubt his request would have been granted. If then, the plaintiff has obtained a verdict, on proof of fraud merely, it is because the defendant did not choose to risk the question of warranty with the jury.

In the view I have taken of this case, I have not thought it necessary to consider at all the nature of this action. The declaration is in the form generally adopted by the best pleaders, in all cases where the object is to recover for the breach of a warranty in the sale of personal chattels.

But although it is an action on a warranty, yet it is for a deceitful and fraudulent warranty, sometimes called in the books, an action on the case in tort, for the breach of a false

*Litchfield,*
*July, 1850.*

Bartholomew
*v.*
Bushnell.

warranty. Lord *Ellenborough* says, " the warranty is the thing which deceives the buyer, who relies on it." Fraud is always alleged, and, where it can be, universally is proved. Indeed, it is not many years since it was supposed to be necessary to prove it. 2 *East*, 446. A warranty, then, is not *ex vi termini,* or technically, a matter of contract merely ; but is often treated as an instrument of fraud. In the text books, it is treated of under the title " Deceit ;" and has always been considered the appropriate remedy, for the breach of a warranty, proved by evidence of fraudulent and deceitful representations.

For these reasons, I am of opinion, there was no error in the decision of the court below, and do not advise a new trial.

In this opinion, CHURCH, Ch. J. concurred.

New trial to be granted.