ROYCE, ALLEN & CO. *vs.* CHARLES H. OAKES.

PROVIDENCE—MARCH 14, 1898.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

Where one acting as the servant or agent of another has collected money for his principal and neglects to pay it over on demand, the only remedy is by assumpsit or debt.

Trespass on the case is an exceedingly broad and comprehensive remedy and lies, in general, where a legal injury is suffered for which the common law has provided no adequate remedy ; but in the case stated such remedy is provided in an action of assumpsit.

An allegation that the neglect to pay over the money was with intent to defraud does not change such neglect into a tort.

TRESPASS ON THE CASE.  Heard on demurrer to amended declaration.

TILLINGHAST, J.  Since the rendition of the former opinion in this case sustaining the demurrer to the second count in the declaration (20 R. I. 252), the plaintiffs have amended said count so as to allege, in substance, that on the 15th day of January, 1894, they authorized and empowered the defendant, who was in their employ for hire and acting as their agent and servant in this behalf, to collect and receive for them, from divers debtors of theirs, various sums of money, amounting in all to the sum of $1,714.60, and thereupon to deliver the same to the plaintiffs.  And they aver that the defendant thereafterwards, in pursuance of said authority, collected said sum of money, and that thereupon it became his duty to pay over the same to the plaintiffs; but that, not regarding his duty in that behalf, although duly requested, intending and contriving to injure and defraud the plaintiffs, he neglected and still neglects to pay said money to them.  And the plaintiffs declare that said refusal was negligent, fraudulent, and in violation of his duty, and that by reason of the premises they are deprived of the possession and benefit of said money.

To this amended count the defendant has demurred on the grounds (1) that the cause of action, if any, set forth therein is an action of contract and not an action sounding in tort, and (2) that the injury alleged to have been suffered by plaintiffs has been suffered by reason of the commission of the crime of larceny, and that it does not appear that any criminal complaint has been made therefor.

We think the demurrer should be sustained on the first ground.  The amended count differs from the former one, which we held amounted to a charge of embezzlement, in that it does not allege that said money was delivered to the defendant for safe keeping, and also in that it does not allege a fraudulent conversion of the money by the defendant to his own use, but simply alleges a breach of duty in not paying over the same to the plaintiffs after demand made

therefor. In other words, when stripped of its formalities, it simply shows a case where a servant or agent has collected money for his principal and neglected to pay it over on demand ; that is, a case of money had and received by the defendant to the plaintiffs' use ; and hence the plaintiffs' remedy, and their only remedy, is by assumpsit or debt. It is true, as contended by plaintiffs' counsel, that the action of trespass on the case is an exceedingly broad and comprehensive form of action ; and that it lies, in general, where a legal injury is suffered for which the common law has provided no adequate remedy. 26 Am. & Eng. Enc. L. 699, and cases in note 5. But in a case like the one set out in said count, the common law has provided an adequate remedy in an action of assumpsit ; and to permit the plaintiffs to maintain their action of trespass on the case would, in effect, be to abolish the distinction between actions sounding in tort and those sounding in contract, and enable a plaintiff, in any case where money has been had and received by another to his use, to sue in a tort action for its recovery.

In *Orton* v. *Butler*, 2 Chit. 343, the same thing was attempted under a declaration the third count of which was nearly identical with the count now in question, except that there the plaintiff stated a stronger case by alleging a conversion of the money received, as the plaintiffs originally did in the case at bar. In sustaining the demurrer to the third count, Abbott. J., said : "The law has provided certain specific forms of action, suited to the recovery of damages, for certain peculiar injuries. We have a smaller variety of forms in our law than is to be found in the civil law ; we have not many, but it is of importance that those we have should be preserved, and that parties should not be permitted, by their own invention, to convert that which from the earliest times has been considered as peculiarly the subject of *assumpsit* or debt, into an action of *tort*. We are to look with jealousy at any innovation of that kind, so that nothing like a precedent shall be established, tending to destroy those sound distinctions which have been established by the wisdom of our ancestors." Best, J., added : "I am of the same opinion.

This is a departure from all precedents ; and even if I were satisfied that it might not be attended with inconvenience, still I think we ought not to permit any innovation upon the ancient forms of proceeding, which are to be considered as part of the settled law of the land.   As well might we alter the doctrine of descents as to freehold property, as alter the long established forms prescribed for the recovery of debts. We are not at liberty to do so.   There is a broad distinction between causes of action arising *ex contractu* and *ex delicto.* This is one arising *ex contractu ;* there is no wrong stated, but merely a breach of contract ; and the plaintiff is not at liberty to convert a mere matter of contract into a tort.   The consequences of a departure from the ancient forms have been well pointed out in argument.   In addition to those may be mentioned that, by altering the remedy, the defendant would be deprived of his plea of tender, and also of the advantage of paying money into court.   But if no such consequences were to follow, I think we ought to adhere to those ancient forms which have been perfected by the wisdom of ages, and confirmed in their utility by the experience of many centuries."

It has never been understood by the bar in this State that a tort action could be maintained for money had and received, even though the person receiving the same has negligently and fraudulently refused to pay over the same to the person to whose use it was received, or has even converted it to his own use ; except, at any rate, as provided by statute, after the commencement of a criminal prosecution.   Gen. Laws R. I. cap. 233, § 16.   On the contrary, the understanding has always been that assumpsit or debt are the only actions that can be employed in such cases ; and we think this position is clearly in accordance with the well settled rules relating to common law actions.   The authorities cited by plaintiff's counsel do not, in our judgment, sustain his position.   They are mostly cases of negligence for failing to discharge some common law duty arising from a contract, and hence are proper subjects for trespass on the case.   1 Chitty Pl. 16 Am. Ed. * 151-2.   The celebrated and familiar

case of *Coggs* v. *Bernard*, 2 Ld. Ray. Rep. 909, is an exam-
ple. *Dickon* v. *Clifton*, 2 Wils. 319, was case for under-
taking to carry and deliver some malt for the plaintiff, and
for so carelessly discharging his duty that the malt was em-
bezzled and lost. *Elsee* v. *Gatward*, 5 D. & E. 143, was
tort for negligence in regard to the use of new material
instead of old in the repair of certain buildings, contrary to
plaintiff's order, which the court held to amount to a misfeas-
ance, and hence a good foundation for the action. *Boorman*
v. *Brown*, 11 Clark & Fin. 1 (Sec. 3, Q. B. 511), is a case
where the plaintiff employed defendant as a broker to sell
and deliver oil for cash, but not regarding his duty he sold
and delivered the oil without obtaining payment therefor;
and the court held that case was a proper remedy, although
the duty imposed upon the defendant arose out of an express
contract. That decision gave rise to the supposition that
every action for a breach of contract might be considered as
an action of tort. But in the subsequent case of *Courtenay*
v. *Earle*, 10 C. B. 73, the court effectually disposed of that
impression, Williams, J., saying that the judgment in the
former case by no means warranted such a conclusion and
that the court did not intend to overrule the case of *Corbett*
v. *Packington*, 6 Barn. & Cres. 268. In the last mentioned
case, one count in the declaration stated that the plaintiff,
at the request of the defendant, had caused to be delivered
to him certain boars, pigs, &c., to be taken care of by the
defendant for the plaintiff, for reward, and that in considera-
tion thereof the defendant undertook and agreed with the
plaintiff to take care of the boars, &c., and to redeliver the
same on request ; and it was held, on motion in arrest of
judgment, that this was a count in assumpsit and could not
be joined with counts in case. Jervis, C. J., in referring to
*Boorman* v. *Brown*, in the case of *Courtenay* v. *Earle*,
*supra*, said : "If the case of *Boorman* v. *Brown* were an
authority to the full extent to which it has been pressed by
counsel, no doubt the third and fourth counts here might
well be joined with counts in tort. But upon examination,
that case will be found to proceed upon this principle—that

where there is an employment, which employment itself creates a duty, an action on the case will lie for a breach of that duty although it may consist in doing something contrary to an agreement made in the course of such employment by the party upon whom the duty is cast. And, if that be so, the case is reconcilable with the other cases with which it has been supposed to be in conflict."

In *Burnett* v. *Lynch*, 5 Barn. & Cres. 589, cited by plaintiffs, an action of tort was sustained where it appeared that defendant was the assignee of a lease with covenants for certain repairs which defendant neglected to make.

*Godefroy* v. *Jay*, 7 Bing. 413, was tort against an attorney who undertook to defend an action and so negligently conducted himself with reference thereto that judgment was signed against the defendant. See also *Zell* v. *Arnold*, 2 Penn. 292 ; *McCall* v. *Forsyth*, 4 Watts & Serg. 179 ; *McCahan* v. *Hirst*, 7 Watts, 175, cited in *Reeside's Ex.* v. *Reeside, infra.*

These cases, and others of like character which are cited, are clearly distinguishable from the case at bar, which is not based upon negligence proper as that term is understood in the foregoing cases, and in analogous cases nor upon any common law duty arising out of a contract, but upon a simple neglect to pay over money when due, as that term is ordinarily used and understood in declarations in actions of debt or assumpsit.

The case of *Ashley* v. *Root*, 4 Allen, 504, seems to be an authority in support of the plaintiffs' position. But in view of the fact that in Massachusetts the common law distinction between actions of contract and actions of tort has been abolished by statute, so far, at any rate, as to allow the two forms to be joined in the same action, as it appears that they were in the writ in that case, the writ averring that the action was " an action of contract or an action of tort, both being for one and the same action," we do not think the case is entitled to that weight which it would be if decided by a court where the common law distinction between such actions prevails, as it does with us. But if that case was decided upon

common law principles and not by reason of the statutory modification referred to, as it would seem to have been, then we have to say that the decision does not commend itself to our judgment as one which we should follow. All of the cases, save one, cited by the court in support of the opinion, are really cases of negligence, and, as we have above suggested, such cases are not analogous to a case of money had and received to the plaintiff's use, which the defendant neglects to pay over.

The very instructive case of *Courtenay* v. *Earle*, 10 C. B. 73, cited by the court in *Ashley* v. *Root, supra,* does contain some general language which, if taken apart from the facts of the case, tends to support the decision; but when taken, as it must be, in connection with the question before the court, we do not think it does. The declaration in that case contained counts which, as construed by the court, merely alleged a promise to pay money upon a good consideration, unconnected with any common law duty, and alleging, for breach, the non-payment thereof. It also contained a count in trover. The defendant demurred on the ground of misjoinder, and the demurrer was sustained. A careful study of the case shows that it is not only not an authority in support of *Ashley* v. *Root*, but it is quite clearly to the contrary.

*Reeside's Executor* v. *Reeside*, 49 Pa. St. 322, cited by plaintiffs, is different from the case at bar in that the declaration there alleged that certain money was entrusted to the defendant by the plaintiff, who was the executrix of a will, to be used by him in paying the debts of the estate, and to return the balance, if any, to her. The declaration also alleged that the defendant accepted and received said money for the purposes of the trust and entered upon the *professional* employment of the settlement of the estate, but notwithstanding his duty in the premises he fraudulently appropriated the money to his own use. The court, by Agnew, J., held that the declaration was good, saying that "where a duty arises out of an implied undertaking to do an act requiring skill or fidelity, a breach of the duty may be the subject of an action of assumpsit upon the implied promise, or of an

action upon the special case for the tort." . . . " The breach of duty and not fraud is the foundation of the action. If, therefore, this was a case where the agent, having received the money of his principal to perform a certain trust, had wholly omitted to perform his duty, and converted the money to his private use, the entire breach of duty no doubt would expose him to an action in form *ex delicto*, or to an action of *assumpsit* for money had and received for the use of the plaintiff." From the cases cited in support of the opinion, it would seem that the court treated the duty of the defendant regarding the money entrusted to him as a common law duty arising out of a contract for *professional* skill, and hence that the breach thereof would give rise to an action of tort. The reasoning of the court is not entirely satisfactory. But even admitting that the decision is correct, the facts set up in the declaration were so different from the case at bar that we cannot treat it as strongly militating against the position we have taken.

Finally, we do not think that the mere fact that the plaintiffs in the case at bar allege in their declaration that the neglect complained of was with the intent to defraud changes such neglect into a tort. *Howe* v. *Cook et al.*, 21 Wend. 29. If this were so, we see no reason why any debtor might not be sued in a tort action, if the plaintiff should see fit to allege that he had *fraudulently* neglected to pay his debt, and thus revive imprisonment for debt.

Demurrer sustained, and case remitted to the Common Pleas Division for further proceedings.

*Irving Champlin*, for plaintiffs.

*Cyrus M. Van Slyck and Charles C. Mumford*, for defendant.